UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| ANDREW SURPRISE, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | Civil Action No.: |
| V. | ) | 3:11-CV-30181-FDS |
| | ) | |
| THE INNOVATION GROUP, INC./FIRST | ) | |
| NOTICE SYSTEMS, INC. AND TERRY RONAN, | ) | |
| | ) | |
| Defendants | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS MOTION FOR SUMMARY
JUDGMENT AND RULE 56.1 STATEMENT OF UNDISPUTED FACTS**

 Defendants, First Notice Systems, Inc.[1] ("First Notice") and Terry Ronan (collectively, "Defendants")

have moved for summary judgment on Plaintiff's Complaint.  This Memorandum, which includes Defendants'

Rule 56.1 Statement of Undisputed Facts, and the Declarations of Gary Bashaw, Michael Cecchetelli, Lindsay

Brown and Stephen T. Paterniti, are submitted in support of Defendants' motion.

**ARGUMENT**

**I. SUMMARY JUDGMENT SHOULD ENTER FOR DEFENDANTS BECAUSE THERE ARE
NO MATERIAL FACTS IN DISPUTE, AND DEFENDANTS ARE ENTITLED TO
JUDGMENT AS A MATTER OF LAW**

 The role of summary judgment is to pierce the pleadings and to assess the proof in order to see whether

there is a genuine need for trial.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). Thus, summary

judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together

with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is

entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  It is well settled that the mere existence of

some alleged factual dispute will not defeat a properly supported summary judgment motion:

---

[1] Defendant First Notice Systems, Inc. states that Plaintiff improperly named it in the Complaint as "The Innovation Group,
Inc./First Notice Systems, Inc."

> [T]here is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party . . .  If the evidence is merely colorable . . . or is not significantly probative, . . . summary judgment may be granted . . . .  In essence . . . the inquiry . . . is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-252 (1986).

Genuine issues of material fact cannot be conjured by a non-moving party who is merely speculating as to what evidence might be produced at trial. On issues where the non-movant bears the burden of proof, he must present definite, competent evidence to rebut the motion.  Anderson, 477 U.S. at 256-257; Suarez v. Pueblo Int'l, Inc., 229 F. 3d 49, 53 (1st Cir. 2000).

## II.   FIRST NOTICE IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S CLAIMS THAT FIRST NOTICE DISCRIMINATED AGAINST HIM BECAUSE OF PLAINTIFF'S ALLEGED DISABILITY

Plaintiff alleges that First Notice violated the ADA by terminating his employment and otherwise "harassing" him (Count I) and by retaliating against him for "reporting and/or resisting" this alleged discrimination (Count II).  Complaint at ¶¶ 15, 20.  Plaintiff makes parallel claims against First Notice under G.L. c. 151B in Counts III and IV, respectively, and a parallel retaliation claim against Mr. Ronan (Count VII). His claims of disability discrimination/harassment/retaliation fail as a matter of law because he never even alleged any claims relating to his own medical condition at the administrative level, which is a mandatory prerequisite to filing suit, and even if he had, he cannot establish a violation of the law.

### A.   Plaintiff's Claims Based on His Allegations that First Notice And Mr. Ronan Engaged In Discrimination, Harassment or Retaliation Against Him Because of His Own Alleged Disability are Barred Because Plaintiff Failed to Raise These Allegations Before the EEOC

Plaintiff's claims that he was discriminated and retaliated against because of his own alleged disability are barred because he did not make such allegations before the EEOC, and he was required to do so in order to be permitted to proceed in court with such a claim.  Bonnilla v. Muebles J.J. Alvarez, Inc., 194 F.3d 275 (1st Cir. 1999). Plaintiff's charge filed with the EEOC did not contain a single allegation that might even allow an

2

inference that he based his disability discrimination claim on his own alleged condition. (Paterniti Dec., Ex. <u>O</u>) Instead, his charge only alleged protection under the disability discrimination laws due to his allegation that he complained about alleged mimicking of the voice of a security guard.  As a matter of law, Plaintiff cannot raise new allegations in support of a wholly different theory of recovery for the first time in his complaint filed with the Court.

This precise issue was decided by the First Circuit in <u>Bonnilla</u>, where the Court upheld a dismissal of a discrimination claim under the ADA due to the plaintiff's failure to file a claim with either the EEOC or the appropriate state or local agency.  The Court ruled that "the ADA mandates compliance with the administrative procedures specified in Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, and that, absent special circumstances (not present here), such compliance must occur before a federal court may entertain a suit that seeks recovery for an alleged violation of Title I of the ADA."  <u>Id.</u> at 277.  Plaintiff's counts pursuant to G.L. c. 151B (Count III and IV) suffer the same fate.  They, too, are barred as outside of the scope of the claims raised by Plaintiff in his administrative charge.  <u>Mole v. University of Massachusetts</u>, 58 Mass. App. Ct. 29, 47 (2003), <u>rev'd, on other grounds</u>, 442 Mass. 582 (2004), <u>citing</u> <u>Lattimore v. Polaroid corp.</u>, 99 F.3d 456, 464-65 (1st Cir. 1996).

The fact that Plaintiff filed an administrative charge invoking protection under the ADA and G.L. c.151B is not sufficient to save his claims.  Courts have unequivocally held that the **very allegations** that are raised in a lawsuit in court **must have first been raised** at the administrative level.  For example, in <u>Wong v. Resolve Tech.</u>, 2011 U.S. Dist. LEXIS 80733 (D. Mass. 2011), the court granted the defendant's motion to dismiss a claim brought pursuant to the ADA, notwithstanding that the plaintiff had included an ADA-based claim in her administrative charge.  The plaintiff had alleged before the MCAD that the defendant discriminated against her on the basis of "Disability, AIDS perceived."  <u>Id.</u> at *6.  However, her eventual complaint alleged that the defendant terminated her employment in part because she was seeking treatment for TMJ and a head injury.  <u>Id.</u>

at *8.  The court noted that although the "exact wording of the charge of discrimination need not 'presage with literary exactitude the judicial pleadings which may follow' . . . , [t]he scope of the suit is 'nonetheless constrained by those allegations in the sense that the judicial complaint must bear some close relation to the allegations presented to the agency.'"  Wong, 2011 U.S. Dist. LEXIS 80733 at *10, quoting Jorge v. Rumsfeld, 404 F.3d 556, 565 (1st Cir. 2005).  The rationale for the exhaustion requirement, the court noted, is that it "gives notice to both the employer and the agency of an alleged violation and affords an opportunity to swiftly and informally take any corrective action necessary to reconcile the violation."  Wong, 2011 U.S. Dist. LEXIS 80733 at *10, citing Thornton v. UPS, Inc., 587 F.3d 27, 31 (1st Cir. 2009) (citing Powers v. Grinnell Corp., 915 F.2d 34, 37 (1st Cir. 1990).  With these concerns in mind, the court granted the defendant's motion to dismiss because the plaintiff had not first made the allegations in her MCAD charge.

The facts here support summary judgment even more forcefully than the facts in Wong that led to dismissal of a disability discrimination claim.  Whereas in Wong the plaintiff had at least contended in her administrative charge that her employer discriminated against her based on her own claimed disability, here, **Plaintiff's administrative charge did not even allege that he himself was disabled.**  Instead, in his administrative charge, Plaintiff claimed that First Notice discriminated against him based **only** on his alleged complaints about the treatment of **another** person.[2]  This was plainly inadequate to put First Notice, Mr. Ronan, or the EEOC on notice of the new allegations based on his own alleged disability.  Having failed to even include any allegations pertaining to his own alleged disability in his EEOC charge, Plaintiff is barred from now raising any such claims, and they must be dismissed as a matter of law.

### B.   Plaintiff Cannot Prove a Prima Facie Case of Disability Discrimination

Assuming, *arguendo*, that Plaintiff could invoke the protections of the ADA and G.L. c. 151B based on his own alleged medical condition, he cannot prove a *prima facie* case of disability discrimination because he

---

[2] Plaintiff's claim based upon the theory that he was retaliated against due to an alleged report of mistreatment of another person are addressed in Section III below.

cannot demonstrate that his alleged back condition substantially limited a major life activity.  Under both the ADA and chapter 151B, a plaintiff must demonstrate such a limitation.  See ADA, **42 U.S.C. 12101** et seq.; G.L. c. 151B, § 1(17).  The record evidence from Plaintiff's own chiropractor establishes that he was not substantially limited in any major life activity.  Dr. Caprile testified that he did not conclude that Plaintiff was restricted from any "activities of daily living", such as brushing teeth, walking to work, driving a car, sitting, standing, climbing stairs, bending over, twisting, "[b]asically, anything you do to live throughout the day." (SOF, ¶¶58, 60, 61, 83)[3] Indeed, the record makes clear that Plaintiff was even able to weight lift, and had no "acute issues."  Further, other employees did not even know Plaintiff had any impairment. In short, there is no evidence that Plaintiff was substantially limited in any major life activity.

**C.     First Notice Discharged Plaintiff for a Legitimate Business Reason, and Plaintiff Cannot Establish Pretext Or a Causal Connection**

If Plaintiff could establish a *prima facie* case, the burden shifts to First Notice to articulate a legitimate, nondiscriminatory reason for its decision.  See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973); see Raytheon Co. v. Hernandez, 540 U.S. 44 (2003) (applying McDonnell Douglas burden shifting framework to ADA disparate treatment claim).  A defendant's burden is merely a burden of production as the burden of persuasion remains with plaintiff.  Sullivan v. Liberty Mut. Ins. Co., 444 Mass. 34 (2005).  A defendant may satisfy its burden by articulating a lawful reason for its employment decision and producing credible evidence to show that the reason advanced was the real reason.  Id. at 50 (citations omitted). Claims alleging retaliation are analyzed under the same burden-shifting framework applicable to employment discrimination claims.  See Higgins v. New Balance Ath. Shoe, Inc., 194 F.3d 252, 262 (1st Cir. 1999); Abramian v. President & Fellows of Harvard College, 432 Mass. 107, 116-17 (2000), quoting Blare v. Husky Injection Molding Sys. Boston, Inc., 419 Mass. 437, 442 (1995) (additional citation omitted).  Plaintiff's discrimination and retaliation claims fail because First Notice terminated his employment for a legitimate business reason, and he cannot show that this reason was pretextual or that the decision to terminate his employment was due to his alleged disability or in

---

[3] Citations to the undisputed statement of facts above are cited as (SOF, ¶____)

retaliation for any activity relating to it.

Here, Defendants have proffered a legitimate reason for terminating Plaintiff's employment – Mr. Ronan concluded Plaintiff was a disruptive and negative force after he was told that Plaintiff made certain statements to colleagues after meeting with him, and his review of Plaintiff's personnel file did not convince him that Plaintiff had significant enough positive attributes to make it worthwhile to retain Plaintiff.  This reason is supported by undisputed facts.  In texts and conversation with Mr. Cecchetelli, Plaintiff stated he met with Mr. Ronan and that Ronan planned significant changes in their department. (SOF, ¶¶ 31-32)  It is undisputed that Mr. Ronan received a call from Mr. Bashaw to register that he (Bashaw) was upset by statements he had been informed Plaintiff was making.  These statements pertained to changes Plaintiff was telling his colleagues Mr. Ronan was planning for the department. (SOF, ¶¶ 33-36)  Moreover, it is undisputed that by the next morning, a firestorm was created in the department due to Plaintiff's comments - employees came to Mr. Bashaw and others to express their complaints about Plaintiff's comments, and Mr. Ronan was advised of these complaints. (SOF, ¶¶ 38-40)  It is also undisputed that Mr. Ronan learned from Mr. Bashaw that Plaintiff expressed a negative attitude towards assisting in handling phone calls in the call center. (SOF, ¶ 44)  It is also undisputed that Mr. Ronan was hired in part to improve employee morale, and decided that Plaintiff was a negative force in the department and thus would be terminated. (SOF, ¶¶ 21-23, 34-36, 37-47) In the face of these undisputed facts, Plaintiff's attempt to create a dispute of fact as to the reason for his termination merely by ignoring the obvious and undisputed reason for his termination and alleging that he was terminated because he mentioned to Mr. Ronan in their initial meeting that he had a back condition or needed or was denied accommodations is entirely unavailing.

In the face of this legitimate business reason, Plaintiff has no evidence of pretext masking a discriminatory animus.  He simply cannot dispute the above facts, and he cannot offer evidence to show that the reason proffered for his termination was not the real reason. Indeed, he cannot even establish that Mr. Ronan was aware of his alleged back condition.  Further, the context of Plaintiff's meeting with Mr. Ronan is also significant in that it demonstrates a lack of evidence of motive or causation.  Mr. Ronan was literally brand new to the

company, having started work only three days before his meeting with Plaintiff.  He was meeting with multiple employees per day, generally becoming acquainted with everyone and asking them about their concerns and ways to improve the workplace.  Mr. Ronan did not even know Plaintiff when Plaintiff approached him for this meeting. (SOF, ¶¶ 22, 24, 26) There is no evidence Mr. Ronan placed any significance on any comments, complaints or reports made by Plaintiff in this meeting, that he followed up on them, or demonstrated any concern or interest in them.  Mr. Ronan's notes from the meeting do not even reflect that Plaintiff mentioned his alleged disability, accommodations or lack of accommodations. (SOF, ¶ 68) Indeed, Mr. Ronan was seeking input from employees about their concerns, and there is no evidence that he took any action against any employees when they expressed their concerns like Plaintiff alleges he did.  In short, Plaintiff has absolutely no evidence that any of his alleged comments resulted in any adverse action whatsoever by Mr. Ronan.

The mere fact that Plaintiff's termination *followed* his meeting with Mr. Ronan by no means suffices to establish that his alleged comments in this meeting *caused* his termination.  See Prader v. Leading Edge Prods., 39 Mass. App. Ct. 616, 617 (1996); Tate, 419 Mass. at 3.   This is precisely what the Court held in Tate, when it affirmed summary judgment in the absence of any *affirmative* evidence that the employer's explanation for the termination was pretextual.  Likewise, in Prader, the court upheld the trial court's grant of summary judgment to the defendant where "the plaintiff failed to meet her burden of demonstrating a causal link between her discharge" and the conduct that she alleged prompted the defendant to retaliate against her. 39 Mass. App. Ct. at 617.  Although the plaintiff claimed that she was discharged because she had received an award of back pay in connection with a Fair Labor Standards Act matter, the defendant noted that other employees had also received such awards and that plaintiff had been the subject of customer and staff complaints regarding her uncooperative attitude.  See id.

Here, Plaintiff cannot point to any evidence whatsoever of causation or pretext.  His entire claim rests solely on two allegations – that in his meeting with Mr. Ronan, he referenced his back condition, and that Mr.

Ronan later decided to terminate him.  In the face of the legitimate business reason for his termination from employment, which was an intervening event that occurred after the meeting between Plaintiff and Mr. Ronan, Plaintiff cannot offer any evidence of pretext.  See Furtado v. Std. Parking Corp., 820 F. Supp. 2d 261, 273 (D. Mass. 2011) (granting employer summary judgment on plaintiff's retaliation claim where "undisputed intervening acts of misconduct sever[ed] the causal connection (if any) between the protected conduct and the adverse employment decision").[4]

For all these reasons, his claims based on allegations that he was terminated harassed or retaliated against in violation of the ADA and G.L. c. 151B (Counts I, II, III, IV and VII) fail as a matter of law and should be dismissed.

### III.  SUMMARY JUDGMENT SHOULD ENTER FOR MR. RONAN ON PLAINTIFF'S CLAIM THAT HIS EMPLOYMENT WAS TERMINATED IN RETALIATION FOR HIS HAVING COMPLAINED ABOUT THE MIMICKING OF A SECURITY GUARD

In Count VII against Mr. Ronan individually, Plaintiff vaguely alleges retaliation. (Complt., ¶ 41)[5] Although this claim should be dismissed based on the reasons asserted above in Section II, Plaintiff may argue he was terminated because in his September 7 meeting with Mr. Ronan, Plaintiff allegedly mentioned that certain supervisors were unprofessional, and as an example offered that in the past, these supervisors copied the voice or speech of a former security guard. This claim has no merit.

In order to establish a *prima facie* case of retaliation under G.L. c.151B, §4, Plaintiff must show that (1) he engaged in legally protected conduct, (2) he suffered some adverse action, and (3) "a causal connection existed between the protected conduct and the adverse action."  Mole v. University of Massachusetts, 442 Mass. 582, 591-92 (2004).   Plaintiff must establish that this alleged comment to Mr. Ronan constitutes legally

---

[4] While Plaintiff alleges harassment based on his disability, Plaintiff's harassment allegations are limited to his allegation that he told First Notice supervisors that he could not lift heavy objects, but First Notice ignored this and instructed him to lift objects such as computers and boxes of paper. (SOF, ¶ 65) This is plainly insufficient to constitute harassment.

[5] The title of the section in Plaintiff's Complaint setting forth this count states that the count is against only Mr. Ronan, but to the extent the Complaint could be read as alleging this count against First Notice as well, the argument applies equally to First Notice.

protected conduct, and that there was a casual connection between Mr. Ronan's decision to terminate his employment and this comment.  See McMillan v. Massachusetts Soc'y for the Prevention of Cruelty to Animals, 140 F.3d 288, 309 (1st Cir. 1998). Summary judgment should enter on Count VII as Plaintiff cannot establish that he engaged in legally protected conduct, and even if he could, there is no evidence of a causal connection between his alleged complaint and the decision to terminate his employment.

### A.     Plaintiff Cannot Prove He Engaged In Legally Protected Conduct

With regard to the element of legally protected conduct, Plaintiff must prove that he reasonably and in good faith believed that First Notice was engaged in wrongful discrimination, and that he acted reasonably in response to his belief.  Pardo v. The General Hosp. Corp., 446 Mass. 1, 21 (2006); Tate v. Department of Mental Health, 419 Mass. 356, 364 (1995).

G.L. c. 151B forbids discrimination and harassment of employees, not third parties. As an initial matter, he cannot even prove that the alleged mocking of a security guard is "a practice forbidden under G.L. c. 151B" because he has no evidence that the security guard was an employee of First Notice.  This fact alone renders his entire claim meritless.  Additionally, even if he could prove the guard was a First Notice employee, he has also not alleged and cannot prove that the security guard suffered any adverse employment action.  Without evidence of any adverse action, G.L. c.151B is not implicated. MacCormack v. Boston Edison Co., 423 Mass. 652, 662 (1996); Lewis v. Gillette, Co., 22 F.3d 22, 24 (1st Cir. 1994); Matthews v. Raytheon Co., 26 Mass. L. Rep. 488, *10, n5 (Mass. Super. Ct. 2009).  The mere copying of a person's voice is not a violation of G.L. c. 151B, so Plaintiff's alleged "report" in a meeting with Mr. Ronan that two supervisors had previously copied the voice of the security guard does not on its face constitute "opposition of a practice forbidden under" G. L. c. 151B, and for this reason alone, his retaliation claim fails.[6]

---

[6] G.L. c. 151B, §§ 4(4) and 4(4A) provide in relevant part:

It shall be an unlawful practice:

He also cannot establish any claim that the alleged mimicking constitutes harassment under G.L. c. 151B. In order to establish actionable harassment, Plaintiff would have to prove, among other elements, that the security guard was in a protected category, and was subjected to unwelcome harassment that was sufficiently severe or pervasive so as to alter the conditions of the guard's employment and create an abusive work environment.  O'Rourke v. Providence, 235 F.3d 713, 728 (1st Cir. 2001). As stated above, Plaintiff cannot establish that the guard was in a protected category because the security guard in question was not disabled, and Plaintiff cannot establish that he had a reasonable belief that the guard was disabled.  "Disability" is defined under both the ADA and G.L. c. 151B as a physical or mental impairment that substantially limits a major life activity.  42 U.S.C. § 12102(1)(A); G.L. c. 151B, § 1(17) (defining corresponding term "handicap").  Here, Plaintiff cannot even establish that the security guard suffered from an impairment.  In support of this element, Plaintiff relies exclusively on his own conclusory testimony that the security guard had a "speech impediment." In fact, the only evidence Plaintiff could even attempt to offer with regard to the security guard's speech is that she was missing some teeth. (SOF, ¶ 16) This is plainly insufficient to prove that she suffered from a physical impairment as defined by the ADA or G.L.c. 151B, or that he could have reasonably believed as much.[7]

Further still, Plaintiff cannot prove that the security guard was substantially limited in a major life activity. Plaintiff did not testify that the security guard was unable to communicate orally. In fact, his testimony makes

---

4. For any person, employer, labor organization or employment agency to *discharge,* expel or otherwise discriminate against any person *because he has opposed any practices forbidden under this chapter* or because he has filed a complaint, testified or assisted in any proceeding under section five.

4A. For any person to coerce, intimidate, threaten, or interfere with another person in the exercise or enjoyment of any right granted or protected by this chapter, or to coerce, intimidate, threaten or interfere with such other person for having aided or encouraged any other person in the exercise or enjoyment of any such right granted or protected by this chapter.

(Emphasis added.)

[7] A physical impairment is defined by the ADA to include: "[a]ny physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: neurological, musculoskeletal, special sense organs, respiratory (including speech organs), cardiovascular, reproductive, digestive, genito urinary, hemic and lymphatic, skin, and endocrine." 29 CFR § 1630.2(h)(1).

clear she could communicate verbally and was understood. Moreover, other employees had no difficulty understanding the security guard when she spoke. (SOF, ¶¶ 16-17)

In addition, Plaintiff cannot prove that the security guard was even aware of the mimicking, and he admits that the alleged mimicking of which he witnessed was not done in her presence, and occurred only twice.[8] (SOF, ¶¶ 14-18)   Based on these circumstances, Plaintiff also cannot establish unwelcome harassment or severe and pervasive conduct necessary for a harassment claim. Id.; see also Clark County School Dist. v. Breeden, 532 U.S. 268, 271 (2001) ("simple teasing, off-hand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment")  As a result, Plaintiff cannot establish that the alleged mimicry which he "reported" constituted harassment, or that he reasonably believed as much, and his claim must fail.  Tate, 419 Mass. at 364 (1995).

Further, in order to satisfy the "protected conduct" requirement, it is not enough for the employee simply to complain to the employer about the "unfairness" of some incident or practice in the workplace; rather the employee must express his/her belief to the employer that a violation of the discrimination law has occurred. See Higgins, 194 F.3d at 262 (1st Cir. 1999) (no protected activity where plaintiff complained of supervisor's treatment, but never expressed belief that supervisor's treatment violated Title VII or any other law).  In addition, because the SJC recognized in Pardo that an employee's belief that wrongful discrimination has occurred must be held "**reasonably** and in good faith," the employee's belief that discrimination has occurred must satisfy both a subjective and **objective** standard.  See e.g., Clover v. Total Sys. Servs., Inc., 176 F.3d 1346, 1351 (11th Cir. 1999) (holding that "the objective reasonableness of an employee's belief that her employer has engaged in an unlawful employment practice must be measured against existing substantive law.")  Here, Plaintiff's statements were at best a report about the alleged rudeness or unprofessionalism of certain supervisors in mimicking the

---

[8] See Locke v. Sales Consultants of Boston, 13 Mass. L. Rep. 164, 2001 Mass. Super. LEXIS 217 (Mass. Super. Ct. 2001) (court granted employer's motion for summary judgment on the plaintiff's retaliation claim because, in part, the court determined that employee could not "show he had a good faith and objectively reasonable belief that [ employer] was engaging in discriminatory behavior based on allegation that plaintiff complained about a single incident that he deemed inappropriate – the pulling of an employee's dress strap by a co-employee)

security guard.  He did not state that he believed their alleged behavior violated the law or constituted wrongful discrimination.[9]

Plaintiff has no proof that the security guard was an employee, was disabled or that Plaintiff had a reasonable belief that she was disabled, that she was harassed, or that an adverse action was taken against her. Thus, he cannot prove he reasonably and in good faith believed that First Notice was engaged in wrongful discrimination, and therefore he cannot prove he engaged in protected activity.

**B.** **First Notice Discharged Plaintiff for a Legitimate Business Reason, and Plaintiff Cannot Establish A Causal Connection Or Pretext**

Assuming, *arguendo*, that Plaintiff could establish a *prima facie* case of retaliation in connection with his comments about the copying of the voice of the security guard, Plaintiff's retaliation claim would still fail because First Notice terminated Plaintiff's employment for a legitimate business reason, and Plaintiff cannot show that this reason was pretextual or that the decision to terminate his employment was due to his "report." (See Section II. C. above) In fact, Plaintiff admits that other employees, including Ms. Eady, made the same complaints.  (SOF, ¶15)  Ms. Eady is still employed by First Notice, a fact which fatally undermines his claim that First Notice or Mr. Ronan harbored a retaliatory motive. Further, Plaintiff cannot point to any evidence that his alleged comments about the two incidents of copying the security guard's voice had any impact or effect on Mr. Ronan.  Aside from the utter lack of credibility to the allegation that Mr. Ronan would have been motivated to terminate him due to such a comment, the lack of evidence that Mr. Ronan paid any attention to the alleged comment or otherwise reacted to it in any way demonstrates the frivolous nature of the claim.

**IV.** **FIRST NOTICE IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S FMLA-RELATED COUNTS**

At base, Plaintiff makes three FMLA-related claims.  Two are "interference" claims: (1) that First Notice

---

[9] Numerous courts have dismissed claims of retaliation, where as here, the employee's articulated complaint(s) to management did not allege illegal discrimination.  Higgins, 194 F.3d at 262; see also Barber v. CSX Distrib. Servs., 68 F.3d 694, 697, 702 (3d Cir. 1995) (complaint by 52-year-old plaintiff that company awarded promotion to less qualified and less experienced employee did not constitute protected conduct under Age Discrimination in Employment Act, even though plaintiff believed he had been unfairly treated: "plaintiff's [complaint] does not explicitly or implicitly allege that age was the reason for the alleged unfairness.  A general complaint of unfair treatment does not translate into a charge of illegal *age* discrimination."); Sitair v. Indiana Dept. of Transp., 344 F.3d 720, 727 (7th Cir. 2003); Marcelin v. Eckerd Corp. of Florida, Inc., 2006 U.S. Dist. LEXIS 18907, *26-*27 (M.D. Fla. 2006).

terminated his employment in order to avoid giving him FMLA leave, and (2) that First Notice used FMLA-protected time (prior absences and late/early departures) as a partial basis to terminate him (Count V). His third is a retaliation-based claim, *i.e.*, that his employment was terminated in retaliation for his having requested FMLA leave. (Count VI)   Summary judgment should enter on both of Plaintiff's FMLA-related counts for the fundamental reasons that: (1) the record contains no evidence that Plaintiff had a "serious health condition," as required by the statute; (2) Plaintiff cannot establish a medical need for the intermittent leave; (3) Plaintiff did not provide the required medical certification; and (4) Plaintiff has no evidence of motive.

Where, as here, a plaintiff adduces no direct evidence of FMLA-based discrimination, the plaintiff must first establish a *prima facie* case, as required by the McDonnell-Douglas framework. For an interference-type claim, a plaintiff must show that: (1) he was an "eligible employee" under the FMLA; (2) the employer was a "covered employer" under the FMLA; (3) the plaintiff gave his employer adequate notice of his request for protected leave; (4) for a covered reason; and (5) he was not returned to an equivalent position at the end of his leave. Furtado, 820 F. Supp. 2d at 280. Similarly, a *prima facie* case for a retaliation claim requires a plaintiff to demonstrate that: (1) he availed himself of a protected right under the FMLA; (2) he was adversely affected by an employment decision; and (3) he was treated less favorably than an employee who had not requested leave under the FMLA, or the adverse decision was made because he sought protection under the FMLA. See Furtado v. Std. Parking Corp., 820 F. Supp. 2d at 279-80. Plaintiff's FMLA-based counts should be dismissed because he cannot make a *prima facie* case in connection with either such count.

## A.     The FMLA Does Not Cover Plaintiff Because He Cannot Show He Had a "Serious Health Condition" Pursuant to the Act

An employee is entitled to the protections of the FMLA only if he has a "serious health condition," 29 U.S.C. § 2612(a)(1)(D), defined as "an illness, injury, impairment, or physical or mental condition that involves . . . continuing treatment by a health care provider," 29 U.S.C. § 2611(11)(B). Plaintiff cannot establish that he received "continuing treatment" or that he was treated by a "health care provider" as both of these terms are

defined by the FMLA.

"Continuing treatment" under the FMLA is defined as "a period of incapacity of more than three consecutive, full calendar days, and any subsequent treatment or period of incapacity relating to the same condition …"   29 C.F.R.§ 825.115.  "Incapacity" means "inability to work, attend school, or perform other regular daily activities due to the serious health condition, treatment therefore, or recovery therefrom." 29 C.F.R. § 825.113.  As Dr. Caprile testified, and as his records reflect, Plaintiff was never incapacitated as defined by the FMLA. (SOF, ¶¶ 64)   Thus, Plaintiff cannot establish he had a serious health condition entitling him to leave under the FMLA.

Plaintiff also is not covered by the FMLA because the medical certification is not valid under the FMLA as it was not signed by a "health care provider" as defined by the FMLA.  The term "health care provider" includes "any other person determined by the Secretary [of Labor] to be capable of providing health care services."   29 U.S.C. § 2611(6)(B). The Secretary of Labor's 2009 Regulations clarify that chiropractors are deemed to be "health care providers" **only** when providing "treatment consisting of manual manipulation of the spine to correct a subluxation **as demonstrated by x-ray to exist**." 29 C.F.R. § 825.125(b)(1) (emphasis added). Plaintiff cannot make the required showing that he received treatment for a spinal subluxation demonstrated by x-ray to exist.  Silcox v. Via Christi Okla. Reg'l Med. Ctr., 196 F. App'x 658, 660 (10th Cir. 2006) (unpublished) (dismissal of plaintiff's claim affirmed because the plaintiff's chiropractor did not take x-rays of the plaintiff's spine and consequently "was not a health care provider within the meaning of the FMLA**.**"); Olsen v. Ohio Edison Co., 979 F. Supp. 1159, 1166-68 (N.D. Ohio 1997) (same).

Here, Dr. Caprile admitted that his diagnosis of subluxation of the spine was not substantiated to exist through x-rays.  Without proof of a subluxation of the spine **as demonstrated by x-ray to exist**, Dr. Caprile cannot qualify under the FMLA as a health care provider and Plaintiff therefore cannot prove that he had a "serious health condition" under the FMLA.  Without such proof, his FMLA claims must fail as he is simply not

covered by the statute.

**B.     Plaintiff Cannot Establish That Intermittent Leave Was A Medical Necessity**

Plaintiff also cannot proceed with any claims pursuant to the FMLA because he cannot establish that any leave he sought was medically necessary.   The FMLA allows for intermittent leave, but only under circumstances in which "there is a medical need for leave and it must be that such medical need can best be accommodated through an intermittent or reduced leave schedule." 29 C.F.R. § 825.202(a), (b).  As is clear from Dr. Caprile's records and testimony, Plaintiff received chiropractic treatment "as needed" for non-acute maintenance and also for general wellness. (SOF, ¶¶ 54, 58) He received this treatment on a consistent basis throughout the period of his employment at First Notice. There is no evidence that the treatments he was receiving at the time he allegedly indicated he was going to request FMLA leave were medically necessary.

Further, even if he could establish medical need, he cannot prove that "such medical need [was] best . . . accommodated through an intermittent or reduced leave."  Plaintiff testified he generally worked five days per week, but the days varied as it was not necessarily Monday to Friday.  In addition, Dr. Caprile saw patients every other Saturday. (SOF, ¶¶ 55-56) In addition, his treatment from June-September 2010 makes clear that the frequency of his visits did not change when Ms. Garcia became his supervisor.  Plaintiff claims that she prohibited him from leaving work to go to his chiropractor. (SOF, ¶ 66, fn 15) Thus, either his testimony is false, or he was able to schedule chiropractic visits outside work hours.  In other words, the evidence indicates Plaintiff would have been able to obtain treatment outside work hours. The reality is that while he may have preferred to leave work and go to his chiropractor for convenience reasons, there was no medical necessity for him to be treated during his work hours.  As such, he is not entitled to the protection of the FMLA.

**C.     An Independently Sufficient Basis for Summary Judgment on Plaintiff's FMLA Counts Exists in the Fact that Plaintiff Failed to Provide a Medical Certification**

Plaintiff's failure to have provided a medical certification to First Notice after First Notice requested it supplies an independent basis upon which the court should grant summary judgment on Plaintiff's FMLA-based

counts (Counts V and VI).  An employer has the right under the FMLA to require that the employee support his request for leave with medical certification issued by the employee's health care provider.  29 U.S.C. § 2613(a) (2004); 29 C.F.R. 825.305(a). The regulations clearly provide that "[a] certification that is not returned to the employer is not considered incomplete or insufficient, but constitutes a failure to provide certification."  29 C.F.R. § 825.305(c).  When an employee fails to provide certification, "the employer may deny the taking of FMLA leave."  29 C.F.R. § 825.305(d).

It is well-established that an employee's failure to provide a requested medical certification can defeat the employee's later claims of both interference- and retaliation-based FMLA claims, such as the claims in Plaintiff's Counts V and VI.  In Kinds v. Ohio Bell Tel. Co., 2012 U.S. Dist. LEXIS 105507, *8-*9 (N.D. Ohio 2012), for example, the plaintiff-employee was ultimately discharged after she failed to provide a medical certification in connection with an absence that she claimed to be covered by the FMLA.  The court concluded:

> [T]he undisputed record reflects that [the plaintiff] failed to comply with 29 C.F.R. § 825.305(b)'s requirement of furnishing sufficient medical certification to [the defendant] in a timely manner.  Having failed to comply with these regulatory requirements, [the plaintiff] cannot establish [a *prima facie* case for her] FMLA interference claim . . . .

Id. at *26.  The claims of plaintiffs alleging FMLA-based retaliation, where such plaintiffs have been unable to demonstrate that they provided requested medical certification, have suffered the same fate.  For example, the court in Lipscomb v. Elec. Data Sys. Corp., 462 F. Supp. 2d 581, 589 (D. Del. 2006) granted summary judgment on the plaintiff's FMLA-based retaliation claim where the plaintiff failed to produce a medical certification in support for her absence."  The court noted that it "decline[d] to impose on defendant more requirements than those called for by statute," and it ruled—categorically—that because the "[p]laintiff failed to provide [medical] certification for her absences[,] . . . her absences were not protected by the FMLA" and that summary judgment should enter on the plaintiff's retaliation claim.  Id. at 590.

The decisions in both Kinds and Lipscomb—granting summary judgment to the respective employers in those cases—persuasively support a grant of summary judgment on Plaintiff's FMLA-based claims here.

D.   **Plaintiff Cannot Establish That First Notice's Legitimate Business Reason For Separating Him From Employment Was Pretextual**

Summary judgment on Plaintiff's claim that First Notice retaliated against him because he sought to take FMLA leave is even more appropriate considering the uncontested evidence that First Notice terminated Plaintiff's employment for reasons entirely distinct from his alleged intent to submit an FMLA medical certification, and Plaintiff has no evidence of pretext or causation. (See Section II.C. above)  In addition, Plaintiff's mother, who was employed by First Notice when Plaintiff worked there, and is still employed by First Notice, has taken been granted FMLA leaves. (SOF, ¶ 67) This fact fatally undermines his claim that First Notice was motivated to terminate his employment because he allegedly sought time off under the FMLA.

V.   **FIRST NOTICE IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S HIPAA-BASED CLAIM THAT HIS EMPLOYMENT WAS TERMINATED IN VIOLATION OF PUBLIC POLICY**

Plaintiff's final attempt to create a claim by alleging that his termination was due to a complaint about HIPAA violations is meritless.  Plaintiff's sole allegation in support of this claim is that in his September 7, 2010 meeting with Mr. Ronan, he (Plaintiff) noted that he had observed a CSR discarding documents without first shredding such documents.  Even if Plaintiff's allegation is assumed true, his wrongful termination claim cannot survive scrutiny at summary judgment because he cannot establish that any public policy was implicated by his action.  Moreover, even if Plaintiff could identify such a policy, First Notice has identified a legitimate basis for the decision to terminate his employment, and he cannot prove that his termination was caused by some other motive.

A.   **Plaintiff Cannot Establish a Well-Defined Public Policy Is At Issue**

In order to survive summary judgment of his wrongful termination claim, Plaintiff must identify a *well-defined* public policy that was violated when his employment was terminated.  Wright v. Shriners Hosp. for Crippled Children, 412 Mass. 469, 472-73 (1992). Claims of wrongful termination, which represent a narrow exception to the general rule of at-will employment in Massachusetts, allow "[r]edress . . . for employees who are terminated for asserting a legally guaranteed right (*e.g.*, filing workers' compensation claim), for doing what the law requires (*e.g.*, serving on a jury), or for refusing to do that which the law forbids (*e.g.*, committing

perjury).”  Smith-Pfeffer v. Superintendent of Walter E. Fernald State School, 404 Mass. 145, 149-150 (1989).  The existence of a public policy is a legal issue for a court to decide; it is not an issue of fact.  Wright, 412 Mass. at 472.

Plaintiff alleges he made only a single statement in his September 7, 2010 meeting with Mr. Ronan that pertained to CSRs throwing away hand notes in a waste basket instead of shredding them. Plaintiff asserts without proof that these documents may have contained HIPAA-protected health information.[10]  **However, HIPAA regulations make very clear that specific means of disposal—such as shredding as opposed to throwing documents away in a trash receptacle —are not prescribed by the statute or by regulations promulgated thereunder.**  See 45 CFR 164.530(c).  Interpreting this regulation, the Department of Health and Human Services, which administers HIPAA, has stated that “the Privacy and Security Rules [of the statute] **do not require a particular disposal method**.  Covered entities **must review their own circumstances** to determine **what steps are reasonable to safeguard [protected health information]** through disposal, and develop and implement policies and procedures to carry out those steps.”  See “Frequently Asked Questions About the Disposal of Protected Information,” attached to the Paterniti Dec. as Ex. P.  (emphasis supplied).  Because HIPAA manifestly does not require the shredding of documents, Plaintiff's sole alleged comment does not implicate any public policy, let alone a *well-defined* public policy.

It is well-settled that complaints about internal policy violations cannot ground a claim of wrongful termination in violation of public policy.  Mello v. Stop & Shop, 402 Mass.555 (1988); Smith-Pfeffer v. Superintendant of Walter E. Fernald State School, 404 Mass 145(1989); Wright v. Shriners Hosp., 412 Mass. at 474-476; Smith-Pfeffer, 404 Mass. at 150-151. In Wright, a nurse employed by a hospital claimed that her termination based on her internal complaints about hospital deficiencies violated public policy.  In affirming

---

[10] It merits noting that Plaintiff is unable to establish how—or even whether—he knew that the documents that he alleged that First Notice improperly discarded contained “individually identifiable health information” (“IIHI”), as that term is defined by HIPAA.  HIPAA defines IIHI, in relevant part, as information that:

> [r]elates to the past, present, or future physical or mental health or condition of an individual; the provision of health care to an individual; or the past, present, or future payment for the provision of health care to an individual; and (i) [t]hat identifies the individual; or (ii) [w]ith respect to which there is a reasonable basis to believe the information can be used to identify the individual.

42 U.S.C. § 1320d(6).  Plaintiff has failed to establish a record concerning *how* he knew the subject documents contained such information.  This glaring failure supplies another basis for summary judgment of Plaintiff's wrongful termination claim.

summary judgment for the hospital, the SJC noted that the plaintiff's actions were not mandated by any state law, and refused to extend the narrow public policy exception to an employee performing "appropriate socially desirable duties."  Id., 412 at 473-474; see Smith-Pfeffer, 404 Mass. at 151 (court held "[i]nternal policy decisions are a matter of judgment for those entrusted with the decision making within the institution.")

In summary, even assuming that Plaintiff did actually complain that First Notice was failing to shred documents containing HIPAA-protected health information, this action would not be sufficient to ground a wrongful termination claim.  Plaintiff's complaint that documents were thrown in the trash instead of being shredded simply does not constitute the assertion of a legally guaranteed right such as the filing of a workers' compensation claim,  he was not required by the law to raise HIPAA complaints of the sort he did and in the manner he did, and this is clearly not a case in which Plaintiff is alleging that he refused to do that which the law forbids.  Because Plaintiff's allegations do not fall within these narrow categories, his wrongful termination claim fails. Smith-Pfeffer, 404 Mass. at 150-151.

### B.       Plaintiff Cannot Prove Causation

Further still, even if it is assumed that Plaintiff can demonstrate that his alleged comment implicated a well-defined public policy—which it did not—Plaintiff cannot establish that First Notice terminated his employment because Plaintiff made such a comment.  Plaintiff can offer only two allegations to support this claim: (1) that he pointed out to Mr. Ronan in their September 7 meeting that he observed a CSR dispose of documents allegedly containing personal health information by throwing it in the trash instead of being shredded, and (2) that he was terminated from employment shortly thereafter.  However, Plaintiff has no evidence that First Notice was motivated to terminate his employment as a result of any alleged HIPAA noncompliance issues he may have raised.  Indeed, Plaintiff has no response to the evidence presented above as to the legitimate business reason First Notice terminated his employment.  (See Section II.C. above).

In fact, Plaintiff alleges he had made similar reports a number of times previously with absolutely no adverse action taken against him. He even alleges that Mr. Bashaw repeatedly acknowledged HIPAA violations were occurring but could not or would not take any disciplinary action. (SOF, ¶ 19) Moreover, Mr. Ronan was hired to improve operations and met with employees to have them identify problems in the workplace. (SOF,¶¶

22-24)   In this context, his allegation that he was terminated for mentioning that CSRs were not always shredding documents is absurd.

## CONCLUSION

For all the above-stated reasons, Defendants First Notice and Terry Ronan respectfully request that the Court grant their motion for summary judgment and dismiss this case in its entirety.

Respectfully submitted,

THE INNOVATION GROUP, INC./ FIRST NOTICE SYSTEMS, INC., and TERRY RONAN

By their attorneys,

/s/ Stephen T. Paterniti
Stephen Paterniti (BBO No. 564860)
paternitis@jacksonlewis.com
Brian M. Childs (BBO No. 662594)
brian.childs@jacksonlewis.com
Jackson Lewis LLP
75 Park Plaza
Boston, MA 02116
617-325-0067

## CERTIFICATE OF SERVICE

This hereby certifies that on October 8, 2012 this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NED) and paper copies will be sent to those indicated as non-registered participants.

/s/ Stephen T. Paterniti
Stephen T. Paterniti

4830-7413-9665, v.  1

20